IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re: Mac's Kwik Stop, Inc.,

    Debtor.

Case No. 22-20857-11

_____

**U.S. Trustee's Objection to Debtor's Plan of Reorganization**
_____

Under 11 U.S.C. §§ 1129(a)(5) and (7), the United States Trustee objects to the debtor's plan of reorganization.[1] The plan proposed fails to satisfy several requirements of the Bankruptcy Code.

The plan proposed by Mac's Kwik Stop, Inc. does not meet the requirements of § 1129(a) and cannot be confirmed. Among the requirements in § 1129(a) is (5), which requires disclosure of any insider compensation. And § 1129(a)(7) requires that each holder in an impaired class must receive at least as much as the holder would receive if the debtor were liquidated under chapter 7. The plan proposed by the debtor runs afoul of these provisions and therefore cannot be confirmed. In addition, there are several other problems or inconsistencies with the debtor's proposed plan of reorganization.

---

[1] Doc. #46.

1

### A. The plan doesn't pay unsecured creditors at least as much as they would receive under a liquidation.

In the debtor's liquidation analysis, it deducts $227,011.17 for secured claims.[2] But in class 2, the debtor lists only $217,011.17 in secured claims.[3] Similarly, the debtor deducts $9,388.53 for priority claims.[4] But in class 1, the debtor lists only $1,388.53 in priority claims.[5] And the debtor lists subchapter V trustee fees as a chapter 7 administrative expense.[6] Ultimately, the debtor proposes to pay unsecured creditors $20,000 less than they would receive in a chapter 7 liquidation. As such, the debtor's proposed plan does not satisfy 11 U.S.C. § 1129(a)(7), because class 3 non-priority unsecured creditors should receive at least $20,000 more than proposed in the plan.

### B. The plan doesn't specify how much to insiders despite § 1129(a)(5).

It is clear the Nobi insiders plan to remain in management, but the plan fails to specify the nature of their compensation.[7] The plan states

---

[2] Doc. #46-1.

[3] Doc. #46 at 3.

[4] Doc. #46-1.

[5] Doc. #46 at 2.

[6] Doc. #46-1.

[7] *See* 11 U.S.C. § 1129(a)(5).

that Mr. Nobi and his wife are working at the business at reduced salaries but does not provide any further explanation or detail.[8] Looking at the cash flow analysis, there is a line item for employee costs which ranges from $450 per month to $6,200 per month. It is not clear if this is the reduced salaries or why the changing amounts.

Without these disclosures, creditors will have to vote on the plan without critical information. "Evidence at the confirmation hearing is no substitute for express statements on these subjects in the plan itself. A plan can be supplemented with evidence that clarifies its terms, but that evidence cannot be substituted for material the Code requires to be set forth in the plan, such as that required by § 1129(a)(5)."[9]

## C.  The proposed plan has other problems as well.

In addition to the above, there are several other problems with the debtor's proposed plan:

- The cash flow shows an IRS priority payment of $2,684 per month, but the class 1 monthly payment is only $26.84. The inaccurate

---

[8] Doc. 46 at 1.

[9] *In re Sunflower Racing*, 219 B.R. 587, 605-06 (Bankr. D. Kan. 1998).

tax payment results in a plan payment, per the cash flow analysis, that is substantially less than the debtor could afford.

- The monthly operating reports do not appear to support the level of income the debtor projects in the cash flow analysis. At the § 341 meeting of creditors, the debtor's principal testified that the debtor's profit margin on gasoline is only 5-10 cents per gallon. That is a profit margin of around 3%, but the cash flow analysis has a profit margin around 17% for gasoline. Together, these result in a plan payment that the debtor cannot realistically make.

- The plan is confusing in that some errors indicate the proposed plan payments are too low and other errors indicate the debtor may not be able to satisfy any plan payment.

- The plan does not commit that all of the debtor's income will be part of the plan.

- The plan should recognize the reorganized debtor's obligation to file operating reports.

- Furthermore, the plan does not fully account for how it would operate if confirmation were non-consensual instead of consensual. The distinction is pivotal. If the Court confirms a non-consensual plan under

4

§ 1191(b), then the subchapter V trustee—not the debtor in possession—must be the disbursing agent for plan payments to creditors, unless the plan or the confirmation order provide otherwise.[10] In this case, however, the debtor's plan says nothing about the subchapter V trustee's role in either scenario.

- And the plan appears to propose payment of tax claims beyond the requirement in § 1129(a)(9)(C)(ii) to complete by five years after the order for relief.

The United States Trustee therefore requests that the Court decline to confirm the plan in its existing form.

Respectfully submitted,

ILENE J. LASHINSKY,
UNITED STATES TRUSTEE

By: *Richard A. Kear*, #20724
Trial Attorney
301 N. Main St., Suite 1150
Wichita, KS 67202
316-269-6213 (phone)
Richard.Kear@usdoj.gov

---

[10] 11 U.S.C. § 1194(b).

## CERTIFICATE OF SERVICE

 I certify that on January 3, 2023, a true and correct copy of this **Objection** was electronically filed with the Court using the CM/ECF system, which sends notification to all parties of interest participating in this case through the CM/ECF system.

       By: *Richard A. Kear*